# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RUBA OTHMAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 11 C 05777 |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions to dismiss [47 and 56] filed by Defendants City of Chicago and Aaron Carranza (collectively "City Defendants") and by Defendant Thomas Behan and on Defendants' objections [64] to Magistrate Judge Nolan's Order of September 13, 2012 [63]. For the reasons set forth below, the Court grants in part and denies in part both Defendants' motions to dismiss [47 and 56] and denies Defendants' objections [64] to Magistrate Judge Nolan's Order. To the extent that Defendants have moved to dismiss Plaintiff Susan Anderson in her individual capacity, Defendants' motions are granted. Defendants' motions are denied in all other respects.

## I.  Background[1]

The Court previously granted the City Defendants' motion to dismiss as to the two federal claims (Counts I and II) over which it had original jurisdiction, but gave Plaintiffs leave to file an amended complaint if Plaintiffs believed they could cure the deficiencies noted in the

---

[1] For the purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in Plaintiffs' amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Court's opinion. Specifically, the Court previously concluded that Plaintiffs had failed to allege that Defendant Officer Aaron Carranza was acting under color of law at the time that Ramiz Othman was shot.

The allegations in Plaintiffs' amended complaint are largely consistent with the allegations in Plaintiff's first complaint, with one major difference.[2] Plaintiffs' original complaint was silent on Othman's reasons for being at Defendants' house at the time that he was shot. Defendants maintain that Plaintiff was attempting to burglarize 5515 S. Normandy Avenue at the time that he was shot and that his presence was unauthorized. Plaintiffs did not address or deny Defendants' allegation that Othman's presence was unauthorized during briefing on the first motions to dismiss. Plaintiffs now maintain that Ramiz Othman was at Defendants' residence—in fact, was "invited" to Defendants' residence—specifically to meet with a City of Chicago police officer to resolve or assist with a previous arrest in Cook County. Plaintiffs further allege that Officer Carranza identified himself as a police officer and that Officer Carranza attempted to arrest Ramiz Othman during this encounter.[3] These allegations go directly to the Court's previous conclusion that Defendant Carranza was not acting under color of law at

---

[2] The following allegations remain unchanged. Plaintiff Ruba Othman, as special administrator of the Estate of Ramiz Othman, and Plaintiff Susan Anderson, individually and as next friend of Sura Othman, filed a 10-count complaint against Chicago police officer Aaron Carranza, the City of Chicago, and civilian Thomas Behan. Plaintiffs' federal and state claims arise from the death of Ramiz Othman. According to Plaintiffs, on August 20, 2010, at approximately 8:30 a.m., Defendants Officer Aaron Carranza and Thomas Behan were at Carranza's house at 5515 S. Normandy Avenue in Chicago. Around that time, Ramiz Othman entered Officer Carranza's home and was shot 14 times by Officer Carranza. Plaintiffs allege that Ramiz Othman was unarmed at the time he was shot. He died shortly after the shooting.

[3] Plaintiffs allege that Defendant Carranza was on "disability" leave during the incident in question; Defendants maintain that he was on "Injured On Duty" status on August 20, 2010. This discrepancy does not alter the Court's analysis at this stage and, in any event, Plaintiffs' version of the facts controls.

the time that Ramiz Othman was shot.

In their amended complaint, Plaintiffs bring three claims under 42 U.S.C. § 1983. Counts I and II of Plaintiffs' complaint offer alternative theories on how Officer Carranza "deliberately and recklessly disregarded and violated Ramiz Othman's Fourth and Fourteenth Amendment rights" by causing Ramiz Othman "serious bodily harm, injuries, and death." Count III alleges a *Monell* claim against the City. Plaintiffs also allege five claims against the City Defendants under Illinois law: Wrongful Death (Count IV), Survival Action (Count V), Excessive Force (Count VI), Battery (Count VII), and Respondeat Superior (Count VII). Plaintiffs' remaining three state law claims are alleged against civilian Defendant Beehan (Counts IX, X, and XI). Both the City Defendants and Behan have moved to dismiss Plaintiffs' amended complaint.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of the way the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed 2d 80 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with

the allegations in the complaint. *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

### A. City Defendants' Motion to Dismiss

Defendants have moved to dismiss Plaintiffs' federal claims and also argue Plaintiff Susan Anderson lacks standing to sue the City Defendants in her individual capacity. The Court will consider each argument in turn.

#### 1. *Counts I and II against Defendant Carranza*

While the Court accepts all well-pled facts in the complaint as true, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555. The Court previously concluded that Plaintiffs had not alleged sufficient facts to demonstrate that Defendant Carranza was acting under color of law. See, *e.g.*, *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515-16 (7th Cir. 2007) ("An action is taken 'under color of state law' if it involves a misuse of power, possessed by virtue of state law and made possibly only because the wrongdoer is clothed with the authority of state law.") (internal citations omitted). Previously, Plaintiffs alleged that Defendant Carranza was in his own home early on a Friday morning and Ramiz Othman entered Defendant's home. The Court concluded that nothing in the pleadings plausibly suggested that "the nature of the specific acts" committed by Carranza were under "color of law"; that he used "any police power"; or that he was "engaged in police activity" during his alleged unnecessary and unreasonable use of force. Rather, Plaintiffs pled only the conclusory allegation that Defendant was acting under color of law and employed

4

as a police officer at the time. In other words, Plaintiffs' original complaint gave no indication that Defendant Carranza's actions were in some way related to his performance of police duties, a prerequisite to finding that Defendant Carranza was acting under color of law. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990).

In their amended complaint, Plaintiffs paint a much different picture. Specifically, Plaintiffs allege that Carranza was holding himself out as an officer (by actually identifying himself as an officer) at the time he shot Ramiz Othman. They also allege, in some detail, that Ramiz Othman went to Defendants' residence specifically on police business: "Ramiz Othman had told others he was privately meeting with a City of Chicago police officer to resolve or assist with a previous arrest in Cook County." Am. Compl. at ¶ 58. Defendants maintain that Plaintiffs' allegations "lack and are unlikely to have evidentiary support," but, simply put, that is not the standard. Defendants' unsubstantiated Rule 11 concerns are not entitled to the same weight as the factual allegations in Plaintiffs' amended complaint.[4] Although the Court too has some concern about these allegations being left out of the original complaint and raised only in response to the Court's detailed opinion on the issue of color of law, and also about Plaintiffs'

---

[4] Defendants maintain that Counts I and II (Plaintiffs' federal claims against Officer Carranza) have been "wholly fabricated by Plaintiffs and their attorney and are sanctionable under Federal Rule of Civil Procedure 11." Motion to Dismiss at 2. At this stage, the Court must accept as true Plaintiffs' factual allegations. However, if Defendants' suspicions prove true after discovery—in other words, if Plaintiffs indeed manufactured facts to demonstrate that Carranza was acting "under color of law" at the time he shot Othman or did not have a good faith basis for their allegations—such conduct would run afoul of Rule 11 and would be sanctionable. See Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances * * * the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). If Defendants believe that they hav a basis for seeking Rule 11 sanctions, they may take appropriate formal steps consistent with that Rule.

5

sources for these allegations (for instance, Plaintiffs' source for their allegation that Officer Carranza identified himself as a police officer), these concerns are for another day. Based on the liberal pleading standard followed in federal court and the allegations contained in Plaintiffs' amended complaint, they have sufficiently alleged that Defendant Carranza was acting under color of state law at the time he shot Ramiz Othman. *Cf. Latuszkin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir. 2001) (holding that the district court's dismissal of the plaintiff's § 1983 claims was proper because the complaint failed to allege that the defendant officer—who was driving drunk and struck and killed a civilian—engaged in police activity, displayed any police power, or held himself out to be a police officer); *United States v. Christian*, 342 F.3d 744, 751 (7th Cir. 2003) (noting that an off-duty officer may be acting under color of state law if he is in uniform and displaying a badge); *Bonsignore v. City of New York*, 683 F.2d 635, 639 (2d Cir. 1982) (dismissing § 1983 claim where off-duty police offer shot his wife with his service revolver and noting that the officer was off-duty when he shot her and was not acting under color of state law since his actions were performed in carrying out his personal pursuits and not "committed in the performance of any actual or pretended duty.").

### 2. *Count III against the City of Chicago*

Plaintiffs also allege a *Monell* claim against Defendant City of Chicago. Plaintiffs allege that the City "failed to properly train Defendant Carranza in the use of deadly force in affecting an arrest" and "failed to properly monitor and supervise the Defendant Carranza." See Am. Cmplt. ¶¶ 78-79. Plaintiffs further contend that Defendant City "failed to adequately train, direct, supervise, discipline, or control Defendant Carranza" and that the City's "failure created a pattern and policy which amounted to the deliberate indifference of the constitutional rights of Ramiz Othman * * *." *Id.* at ¶ 81. Plaintiffs also maintain that the City "failed to require the

return of Defendant Carranza service weapon and failed to recover the Defendant Carranza's service weapon, while the Defendant Carranza was on disability leave having sustained an injury to his right hand and while on medication." *Id.* at ¶ 76. Finally, Plaintiffs allege that the City failed to have an "independent police department investigate the [ ] shooting on August 20, 2010," and failed to "conduct a thorough and complete investigation of this matter."

A municipality is not liable under § 1983 unless the constitutional violations at issue are caused by a municipal policy or custom. See *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 694 (1978). Specifically, to prevail on a § 1983 claim against a city a plaintiff must prove: (1) a violation of his constitutional rights; (2) an injury; and (3) that the injury and violation of rights was directly caused by the City's own action or inaction that carried the requisite degree of fault. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-05 (1997). The Court previously dismissed Plaintiffs' *Monell* claim because Plaintiffs failed to allege sufficient facts to show that Defendant Carranza was acting under color of state law and thus failed to allege a cognizable constitutional injury. See *Houskins v. Shehan*, 549 F.3d 480, 493 (7th Cir. 2008) (where plaintiff fails to establish deprivation of a constitutional right, *Monell* claims must also fail); *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998) (a *Monell* claim "requires a finding that the individual officer are liable on the underlying substantive claim.").

As previously set forth, Plaintiffs' new allegations have, at least for the time being, cured Plaintiffs' deficiencies with respect to whether they sufficiently alleged that Defendant Carranza was acting under color of law. In moving to dismiss Plaintiffs' *Monell* claim, Defendants' arguments for why Plaintiffs' *Monell* claim fails primarily mirror the arguments advanced in support of their motion to dismiss Counts I and II; in other words, Defendants argue that because

7

Carranza was not acting under color of law at the time of the shooting, Plaintiffs have failed to establish the requisite causal connection between a City policy and the alleged constitutional injury. Defendants also quibble with Plaintiffs' version of the facts. For reasons stated previously, at this juncture, neither of these arguments is persuasive.

Furthermore, to the extent that Defendants offer additional arguments—for instance, Plaintiffs' complaint contains boilerplate allegations (see *Hossman v. Blunk*, 784 F.2d 793, 797 (7th Cir. 1986)), and Plaintiff's claim must be dismissed for failure to allege more than a single instance of wrongdoing (see *Sivard v. Pulaski County,* 17 F.3d 185, 188 (7th Cir. 1994))—these arguments also have been met with skepticism at the motion-to-dismiss stage. Although Plaintiffs have not identified any other person who was a victim of the City's allegedly unconstitutional policies, they do, as described above, allege that these practices constitute an ongoing custom, policy, or practice that harms the City's citizens. Furthermore, the case typically cited as support for this proposition involved a motion for summary judgment, not a motion to dismiss, and does not address notice pleading standards. See *Sivard*, 17 F.3d at 187; *Frieri v. City of Chicago,* 127 F. Supp. 2d 992, 995 (N.D. Ill. 2001) (observing that *McCormick's* holding that "boilerplate allegations" are sufficient to plead municipal liability under § 1983 clarifies confusion created, in part, by *Sivard).*

Plaintiffs' amended complaint sufficiently alleges *Monell* liability. Plaintiffs allege that the customs, policies and practices of the City caused Plaintiffs' harm and that the City facilitated the constitutional wrongs in this case. Plaintiffs detail the failures, including: (1) failing to train officers on how to affect an arrest; (2) failing to require the return of an officer's service weapon during leave periods; (3) failing to conduct thorough investigations into alleged officer misconduct; and (4) failing to discipline officers for alleged misconduct. Plaintiff's

complaint contains a sufficiently "short and plain statement" that a government entity's official policy or custom caused Plaintiffs' injuries. When read in a light most favorable to Plaintiffs, the facts alleged adequately state a cause of action for § 1983 municipal liability.

### 3. *Standing of Plaintiff Susan Anderson*

The City Defendants, as well as Defendant Behan, move to dismiss Plaintiff Susan Anderson pursuant to Federal Rule of Civil Procedure 12(b)(1), which governs dismissal for lack of subject-matter jurisdiction. Defendants collectively maintain that Susan Anderson lacks standing to bring this suit on her own behalf because Anderson is not Ramiz Othman's surviving spouse or next of kin. See, *e.g.*, *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-76 (1982).

Since § 1983 does not address the types of damages available to the estate when an individual is killed by an alleged unconstitutional state action, the federal court must look to state law, so long as it is not inconsistent to § 1983's policies. *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir.1985). Illinois law provides two potential avenues for seeking damages: the Wrongful Death Act and the Survival Act. *Pitzer v. City of East Peoria, Illinois*, 708 F. Supp. 2d 740, 744 (C.D. Ill. 2010). The Wrongful Death Act allows a decedent's estate to recover pecuniary damages for injuries incurred by a surviving spouse and next of kin. 740 ILCS 180/1 et seq. The Survival Act allows the decedent's estate to continue a decedent's own cause of action to recover for conscious pain and suffering, as well as medical expenses incurred before death. 755 ILCS 5/27-6 et seq.

Plaintiff Susan Anderson brings her claim, *individually,* and as mother and next friend of minor Sura Anderson. Plaintiffs allege that Sura Anderson is Ramiz Othman's minor daughter,

9

making her Ramiz Othman's next of kin. Susan Anderson, however, is not Ramiz Othman's surviving spouse. Thus, Plaintiff Susan Anderson lacks standing to bring a claim pursuant to the Wrongful Death Act on her own behalf since she is not Ramiz Othman's surviving spouse or next of kin. See 740 ILCS 180/2; see also *Glenn v. Johnson*, 764 N.E.2d 47, 52 (Ill. 2002); *Elliot v. Willis*, 442 N.E.2d 163, 168 (Ill. 1982) (The Wrongful Death Act is designed "to compensate the surviving spouse and next of kin for the pecuniary losses sustained due to the decedent's death."). Therefore, Susan Anderson is dismissed as an individual plaintiff in this action; she remains in the case as next friend of minor Sura Anderson.

B. **Claims against Thomas Behan**

Plaintiffs have brought three claims, in the alternative, against Thomas Behan. Plaintiffs allege that Behan was present and participated in the shooting death of Ramiz Othman. Defendant Behan contends that he cannot be held liable for failing to control Defendant Carranza. But Plaintiffs have not alleged a failure to control or prevent Defendant Carranza from shooting Othman. Rather, Plaintiffs have alleged that Behan was present and participated in the shooting. At this stage, these allegations are sufficient to state claims for wrongful death, survival action, and battery against Thomas Behan.

C. **Discovery**

Despite the relevant youthfulness of this case, there already have been discovery disputes. On January 17, 2012, Plaintiffs moved for discovery, complaining that discovery was necessary in order to respond to Defendants' motion to dismiss Plaintiffs' original complaint. On January 26, 2012, Defendants filed their response to Plaintiffs' motion, and on April 3, 2012, the Court denied Plaintiffs' motion. As previously set forth, the Court then granted Defendants' first motion to dismiss Plaintiffs' §1983 and *Monell* claims, dismissed their state court claims without

prejudice (giving them leave to re-file in state court), and gave Plaintiffs 21 days to replead, consistent with case law and Rule 11.

Since that time, Plaintiffs filed their first amended complaint and Defendants filed motions to dismiss. Plaintiffs then filed their second motion for discovery on August 6, 2012, which was referred to Magistrate Judge Nolan, along with all further discovery motions and discovery supervision. On September 13, 2012, Judge Nolan issued an opinion granting Plaintiffs' motion. Specifically, Judge Nolan ordered the City to produce the remainder of the police file regarding the investigation into the shooting and death of Ramiz Othman, as well as the DVD recordings from Tom's Tap. Additionally, she granted leave to Plaintiffs to take the depositions of Defendants Carranza and Behan, as well as Carranza's mother.

In their objections, Defendants do not object to turning over whatever remaining documents exist in the police file, nor do they object to providing a copy of the inventoried DVD from Tom's Tap. Objection at 3. However, Defendants "do object to submitting Carranza and his mother to depositions in this matter, should Plaintiffs' federal claims again be deemed inadequate." *Id.* The Court has determined that Plaintiffs' federal claims may go forward and therefore discovery may proceed before newly-assigned Magistrate Judge Mary Rowland as well. However, at this time, the Court will stay *Monell* discovery at least until the parties have completed discovery on the claims against the individual Defendants and have been afforded the opportunity to bring dispositive motions on the claims against the individual Defendants.

## IV. Conclusion

For these reasons, the Court grants in part and denies in part Thomas Behan's motion to dismiss [47] and grants in part and denies in part the City Defendants' motion to dismiss [56].

11

Plaintiff Susan Anderson may proceed as "mother and next friend of Sura Othman," but may not proceed individually. The Court also denies Defendants' objections [64] to Magistrate Judge Nolan's order. Discovery may proceed in the limited fashion ordered by Magistrate Judge Nolan or as ordered by Magistrate Judge Rowland. However, at this time, the Court will stay *Monell* discovery at least until the parties have completed discovery on the claims against the individual Defendants and have been afforded the opportunity to bring dispositive motions on the claims against the individual Defendants.

Dated: October 23, 2012

_____
Robert M. Dow, Jr.
United States District Judge