**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RUBA OTHMAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 11 C 05777 |
| v. ) | |
| ) | |
| CITY OF CHICAGO, et al., ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant City of Chicago's motion for summary judgment on Plaintiffs' *Monell* claim [174]. For the reasons set forth below, the Court grants Defendant City of Chicago's motion for summary judgment [174] and dismisses Plaintiffs' *Monell* claim.

**I.   Background**

   **A.   Procedural History**

Plaintiff Ruba Othman, as special administrator of the Estate of Ramiz Othman, and Plaintiff Susan Anderson, as next friend of minor Sura Othman, originally filed a 10-count complaint against Chicago police officer Aaron Carranza, the City of Chicago, and civilian Thomas Behan.[1] Plaintiffs' federal and state claims arose from the death of Ramiz Othman. According to Plaintiffs, on August 20, 2010, at approximately 8:30 a.m., Defendant Officers Aaron Carranza and Thomas Behan were at Carranza's house at 5515 S. Normandy Avenue in Chicago. Around that time, Ramiz Othman entered Officer Carranza's home and was shot 14

---
[1] The Court dismissed all claims against Defendant Thomas Behan on June 12, 2013.

times by Officer Carranza. Plaintiffs alleged that Ramiz Othman was unarmed at the time he was shot. Othman died shortly after the shooting.

While Plaintiffs' original complaint was silent on Othman's reasons for being at Defendants' house at the time that he was shot, Defendants maintained that Plaintiff was attempting to burglarize 5515 S. Normandy Avenue at the time that he was shot and that his presence was unauthorized. Plaintiffs clarified their allegations in an amended complaint, alleging that Ramiz Othman was at Defendants' residence—in fact, was "invited" to Defendants' residence—specifically to meet with a City of Chicago police officer to resolve or assist with a previous arrest in Cook County. Plaintiffs further alleged that Officer Carranza identified himself as a police officer and that Officer Carranza attempted to arrest Ramiz Othman during this encounter.

### B. Factual Background

#### 1. *Statements of fact*

The Court has taken the relevant facts from the parties' Local Rule ("L.R.") 56.1 statements. Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The rule also requires the non-movant (here, Plaintiffs) to file a concise response to a movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(3)(A). While Plaintiffs have filed a response, their denials are not supported by any citations to any evidence, as required by the rule. Thus, to the extent that the City has supported its fact statements with citations to evidence in the record, the Court deems

those facts admitted. See N.D. Ill. L.R. 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F. 3d 625, 632 (7th Cir. 2009) ("[w]hen a responding party's statement fails to dispute the facts set forth in the moving party's statement in a manner dictated by the rule, those facts are deemed admitted for purposes of the motion"); *Ammons v. Aramark Uniform Services, Inc.*, 368 F. 3d 809, 817 (7th Cir. 2004) (stating that an adequate denial must include a specific reference to an affidavit or other part of the record that supports it).

Plaintiffs also have filed additional statements of facts, but unfortunately, many of Plaintiffs' additional facts also fail to comply with Local Rule 56.1. The majority of Plaintiffs' facts contain no citation to the underlying record, in violation of part (b)(3)(B) of the Rule. L.R. 56.1(b)(3)(B). Local Rule 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). As the Seventh Circuit has stressed, it is not the role of the Court to parse the parties' exhibits to construct the facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 2010 WL 4942161, at *7 (N.D. Ill. Dec. 8, 2010) (citing *DiLeonardi,* 181 F.3d 865, 867 (7th Cir. 1999)). It simply is not the court's job to sift through the record to find evidence to support a party's claim. *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job * * * to make it easy for the court to rule in [her] client's favor * * *." *Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609, 613 (7th Cir. 2006).

Furthermore, it is the function of the Court, with or without a motion to strike, to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in

support of the statement. See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004). Where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. Thus, any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the record will not be considered by the Court in ruling on the summary judgment motion. Any paragraph or fact that is not supported by record evidence will be disregarded. A few of Plaintiffs' additional fact statements do contain citations to record evidence, and those will be considered.

### 2. Facts

On August 20, 2010, Defendant Aaron Carranza was on medical leave from his job as a City of Chicago police officer. At approximately 9:15 a.m. that morning, Carranza was inside his residence located at 5515 S. Normandy Avenue, in Chicago, Illinois. According to Carranza, a Hispanic male rang his door bell and knocked on his door, but Carranza did not open the door. Carranza testified that an intruder, later identified as Ramiz Othman, then entered into his home by kicking in his basement door. After kicking in the basement door, Ramiz Othman made his way upstairs and Defendant Carranza confronted him at that time. According to Carranza's testimony, Ramiz Othman advanced towards Defendant Carranza with a tire iron raised above his head and began swinging the tire iron toward Carranza. Carranza then shot Othman multiple

times with his personal, Sig Sauer 9-millimeter handgun.[2] Carranza testified that he shot Othman in the back while Othman was on the ground. Carranza further testified that he stopped firing his gun when he ran out of bullets.

### 3. Monell *discovery*

On October 23, 2012, the Court stayed *Monell* discovery until the parties completed discovery on the claims against the individual defendants and had been afforded the opportunity to bring dispositive motions on the claims against the individual defendants. During the time that *Monell* discovery was stayed, Plaintiffs served the City with a request to produce that called for "[a]ny and all Chicago Police Department documents, policies, procedures, codes, rules, manuals, guides, requirements, agreements, records, and memoranda, in any form whatsoever with respect to the following:

- a. Medical and/or disability leave for police officers;
- b. Service weapon use, issuance, and carrying of service weapons by plain clothed police officers;
- c. The use, ownership, issuance, and carrying of service weapons by plain clothed police officers;
- d. The use of a service weapon by police officers in effecting an arrest;
- e. Rapid firing a service weapon by police officers;
- f. The use of force by police officers in effecting an arrest;
- g. Plain clothed police officers;
- h. Investigation of police officer involved shootings;

---

[2] Although Plaintiffs deny that Ramiz Othman was an intruder, that he forcibly entered Carranza's home, and that he kicked in the basement door, their denials are not supported by any citations to any evidence. Therefore, for purposes of the instant summary judgment motion, the Court deems these facts admitted. See N.D. Ill. L.R. 56.1(b)(3)(B); *Cracco,* 559 F. 3d at 632; *Ammons*, 368 F. 3d at 817.

5

i. A police officer's duty, responsibility, and/or obligation to identify oneself as a police officer to citizens;

j. A police officer's duty, responsibility, and/or obligation in effecting an arrest;

k. The procedure of effecting an arrest;

l. A police officer's duty, responsibilities, and/or obligations while not "on duty";

m. A police officer's duty, responsibilities, and/or obligations while "on duty";

n. A police officer's duty, responsibilities, and/or obligations while on medical and/or disability leave;

o. A police officer's training with respect to the constitution rights of citizens;

p. A police officer's qualifying for using a service weapon; and,

q. A police officer's authority as a City of Chicago Police Officer.

In response to Plaintiffs' request to produce, the City objected to the request on the grounds that it was unduly burdensome, overly broad in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence. The City further objected to subparts G, H, L, M, and Q of Plaintiffs' request as vague and ambiguous. Finally, the City objected to Plaintiffs' request on the ground that *Monell* discovery was stayed and the information sought by Plaintiffs was irrelevant to the inquiry of whether Ramiz Othman's constitutional rights were violated. Subject to these objections, the City answered Plaintiffs' request by referring them to the Chicago Police Department Directives website, which contains the CPD's general orders, special orders, and other resources.

On January 14, 2014, the Court lifted the stay on *Monell* discovery, and on January 21, 2014, the Court adopted the parties' agreed *Monell* discovery schedule in which written *Monell* fact discovery would close on April 1, 2014, oral *Monell* fact discovery would close on June 1,

6

2014, and expert *Monell* discovery would close on August 1, 2014.[3]

On January 23, 2014, the City served Plaintiffs with a second set of interrogatories and requests to produce, asking Plaintiffs to "state with specificity the evidence" upon which they rely to support their allegations that (1) each of the allegedly deficient policies and practices exist, (2) that the City's final policymaker was deliberately indifferent to each policy or practice, and (3) that each policy or practice was the proximate cause of Ramiz Othman's constitutional violations, and for all documents that are referred to and are supportive of their answers to the City's *Monell*-based interrogatories. On April 29, 2014, Plaintiffs mailed their answers to the City's second set of interrogatories and production requests. In response to each of the City's interrogatories, Plaintiffs provided the same standard answer, which stated:

> Objection, for its answer to Plaintiff's First Supplemental Request to Produce, the City of Chicago has failed to produce any policy, procedure, code, rule, manual, guide, etc. as requested by Plaintiffs. Rather, the City of Chicago referred Plaintiffs to an online searchable directory of Chicago Police Department policies and directives. Subject to the limitations of searching the directory (knowing and/or discovering applicable keywords) and that the City of Chicago has failed to indicate and/or produce any specific policy with respect to this Interrogatory, the Plaintiffs Respond hereto.
>
> Ramiz Othman was shot numerous times by a City of Chicago Police Officer during the course of his employment. He was shot several times in the back, while retreating and defenseless. The Plaintiff's allegations are based upon and supported by the pleadings, the deposition testimony of Aaron Carranza, the deposition testimony of other witnesses to date, the documents and file disclosed by Aaron Carranza already in the possession of the City of Chicago, and Aaron Carranza's medical records. The allegation speaks for itself and is not in dispute. Further, the City of Chicago failed to answer the Plaintiff's request to identify any specific policy applicable to this allegation, and instead referred Plaintiff to an online directory of Chicago Police Department Directives. The Plaintiffs have examined the Chicago Police Department Directives to the best of their ability and have found no directive with respect to this allegation. The lack of any

---

[3] On July 23, 2014, the Court granted the City's oral motion to stay the depositions of its *Monell* experts until after a ruling on the City's motion for summary judgment on Plaintiffs' *Monell* claim.

> directive or policy, combined with the deposition testimony to date and records disclosed by Aaron Carranza, indicates a failure by the City of Chicago, deprivedRamiz Othman of his constitutional rights on or about August 20, 2010, and supports the allegations of Plaintiffs at bar.

Plaintiffs did not produce any documents in response to the City's *Monell* production requests and instead stated that "Ruba Othman is not in possession of additional documents not previously disclosed to the Defendants through discovery. Upon information and belief, the Defendant is already in possession of documents disclosed by Aaron Carranza, including a copy of his deposition transcript, and his medical records."

Plaintiffs' Rule 26(a) disclosures did not identify any individuals with policymaking authority, nor did they list any documents related to any of Plaintiffs' policy claims. Plaintiffs did not tender any amendments or additional responses to the City's second set of interrogatories and requests for production. Plaintiffs did not request any additional discovery from the City related to their *Monell* claim once the stay on *Monell* discovery was lifted, nor did Plaintiffs file a motion to compel against the City based on its responses to Plaintiffs' first supplemental requests to produce.

## II.     Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2) and noting summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). In determining

whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit – "when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Koszola v. Bd. of Educ. of City of Chicago*, 385 F. 3d 1104, 1111 (7th Cir. 2004). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III.  Analysis**

In their amended complaint, Plaintiffs bring three claims under 42 U.S.C. § 1983: Counts I and II of Plaintiffs' complaint offer alternative theories on how Officer Carranza "deliberately and recklessly disregarded and violated Ramiz Othman's Fourth and Fourteenth Amendment rights" by causing Ramiz Othman "serious bodily harm, injuries, and death," and Count III alleges a *Monell* claim against the City. To prevail against a municipality under § 1983, it is not

enough for a plaintiff to show that an employee of the municipality violated his constitutional rights; rather, the plaintiff must establish that his constitutional injuries are directly caused by a policy or custom of the municipality. See *Hahn v. Walsh*, 2014 WL 3906501, at *15 (7th Cir. Aug. 12, 2014) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978)); see also *Board of County Com'rs of Bryan Count, Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("[w]e have consistently refused to hold municipalities liable under a theory of respondeat superior"). More specifically, the plaintiff must prove that: (1) he suffered a deprivation of a federal right;[4] (2) deliberate action attributable to the municipality itself; and (3) the municipality's deliberate action was the "moving force" behind the plaintiff's deprivation of federal rights. The City has moved for summary judgment on the *Monell* claim, contending that it is entitled to summary judgment because Plaintiffs have produced no evidence that would create a genuine issue of material fact in support of § 1983 municipal liability.

In their amended complaint, Plaintiffs assert several *Monell*-type allegations. However, in their response brief, Plaintiffs abandon the majority of their *Monell* allegations except for claims related to the City's alleged failure to retrieve Defendant Carranza's weapon and to restrict his police powers while he was on medical leave (see Pls.' Resp. at 1, 5-9).[5] Thus, the Court focuses solely on these allegations and any evidence (or lack thereof) in the record to the support the allegations.

---

[4] For purposes of its instant motion, the CIty assumes as true Plaintiffs' allegation that Ramiz Othman suffered a constitutional violation.

[5] In their amended complaint, Plaintiffs allege that the City "failed to require the return of Defendant Carranza's service weapon and failed to recover [ ] Defendant Carranza's service weapon, while [ ] Defendant Carranza was on disability leave having sustained an injury to his right hand and while on medication." Plaintiffs also allege that the City "failed to strip Defendant Carranza of all police powers and duties while he was on disability leave."

A plaintiff seeking to hold a municipality liable under § 1983 may show deliberate action that is attributable to the municipality itself in one of three ways: (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority. See *Calhoun v. Ramsey*, 408 F. 3d 375, 379 (7th Cir. 2005).

As an initial matter, Plaintiffs declare that the City has no written policies that restrict police officers who are deemed to be unfit for duty or that address medical leave and the use of weapons. Plaintiffs' basis for their claim that the policies in question "do not exist" is that they were unable, through a search of the CPD's online directory, to locate the policies in question. However, despite ample time to do so and as detailed previously, Plaintiffs never issued additional written discovery to seek clarification on this issue or to confirm that there were no policies on point. Moreover, Plaintiffs never moved compel a more specific response from the CPD.

Additionally, the City has presented evidence of numerous policies addressing these issues, all of which are contained on the Chicago Police Department Directives website provided to Plaintiffs. For example, Employee Resource Order E03-01, titled "Medical Policy," provides that the CPD has "a duty and responsibility to ensure all Department members possess the physical stamina and psychological stability to perform required duties. The Superintendent of Police or his designee may require any Department member to submit to physical and/or psychiatric examinations in order to determine fitness for duty." Similarly, the "Drugs, Drug Abuse, and Mandatory Physical and/or Psychological Examinations" order (Employee Resource

11

Order E01-09) provides procedures by which mandatory physical and psychological examinations of police officers will take place. The "Sworn Limited Duty Program" (Employee Resource E03-01-03) provides conditions and procedures for limited duty status based on a police officer's medical limitations. In addition, Section II(C) of Uniform and Property Order U04-02, titled "Department Approved Weapons and Ammunition," provides that while "sworn members are permitted to carry firearms during nonduty hours, they are instructed to refrain from doing so when there is a likelihood that they will be consuming alcoholic beverages or medications which may impair their physical and/or mental abilities." Finally, Section L of the special order titled "Sustained Complaint Options," S08-01-04, provides that a sworn member of the CPD who is on suspension is still bound by the Department's rules, regulations, directives, and orders, and will not exercise any police powers of a Chicago police officer or carry a firearm.

Even with these policies on the CPD's books, it is unreasonable to expect municipalities to create written policies to address every possible contingency that might arise. See *Calhoun*, 408 F. 3d at 380 ("[n]o government has, or could have, policies about virtually everything that might happen."). In *Calhoun*, the Seventh Circuit explained that the absence of a policy

> might thus mean only that the government sees no need to address the point at all, or that it believes that case-by-case decisions are best, or that it wants to accumulate some experience before selecting a regular course of action. At times, the absence of a policy might reflect a decision to act unconstitutionally, but the Supreme Court has repeatedly told us to be cautious about drawing that inference.

*Id.* at 380 (internal citations omitted). Regardless, even where a plaintiff is attacking gaps in an express policy, the plaintiff must present evidence that a "true municipal policy" is at issue rather than a random event by demonstrating that the "same problem has arisen many times and the municipality has acquiesced in the outcome." *Id.*; see also *Condon v. City of Chicago*, 2011 WL

5546009, at *4 (N.D. Ill., Nov. 9, 2011) (holding that plaintiff must establish that gap in policy results in widespread deficiencies.)

Here, Plaintiffs have not presented any evidence that a gap in the City's written policies or that its unofficial practices caused widespread constitutional violations. See *City of Okla. v. Tuttle*, 471 U.S. 808, 824 (1985) ("where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish that the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation"); *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 796 (7th Cir. 2014) ("isolated incidents do not add up to a pattern of behavior that would support an inference of a custom or policy"); *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("a single incident – or even three incidents – do not suffice" to establish a widespread practice); *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference"); *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) ("a single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct.") see also *Hahn*, 762 F.3d at 640 (stating that the widespread unofficial practice must be "so entrenched and well-known as to carry the force of policy."). Instead, Plaintiffs attempt to prove that the City has a longstanding, widespread deficient practice by pointing to the fact that Defendant Carranza fired 14 shots at Ramiz Othman. See Pls.' Resp. at 8-9. Specifically, they argue that each shot constituted "a separate constitutional deprivation" because "each shot required a separate trigger pull and each shot required a decision by Carranza to 'shoot'." See Pls.' Resp. at

9. Further, Plaintiffs state "[w]hile Carranza may contend that the shooting was a single event, his argument says in effect, 'the pistol had a mind of its own.'" *Id.*

Plaintiffs' claim that Defendant Carranza's 14 shots, taken together, constitute a widespread or longstanding deficient practice of the CPD is unavailing. It is well-established that an isolated problem with a single police officer does not provide a basis for municipal liability. See *Rikas v. Babusch*, 2014 WL 960788, at *3 (N.D. Ill. Mar. 12, 2014) ("an isolated problem with a single officer generally does not give rise to *Monell* liability"); see also *Condon*, 2011 WL 5546009, at *3 ("[f]actors peculiar to a single officer involved in a particular incident are not sufficient to demonstrate a 'widespread practice'"); *Richardson v. City of Chicago*, 2011 WL 862249, at *13 (N.D. Ill. Mar. 10, 2011) (incidents involving a discrete subset of officers are insufficient to establish a widespread practice). In a force of more than 12,000 police officers, Defendant Carranza's actions alone are not indicative of a "widespread" pattern among Chicago police officers.

Even more problematic for Plaintiffs' novel argument is that it would be impossible for the City's final policymakers, presumably the City Council, to be placed on "notice" of each purported constitutional violation (each shot fired) and have an opportunity to take action because all of the shots were fired within seconds of each other. See *Hahn*, 762 F.3d 617, 636 (7th Cir. 2014) (plaintiff may show that a municipality caused a constitutional injury "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned * * * the misconduct of subordinate officers"). In other words, Plaintiffs cannot prove that the City's final policymakers acted with "deliberate indifference" or turned a blind eye to a pattern of violations when Plaintiffs have offered no

evidence to show that the final policymakers had reason to be aware that the policies or practices posed any risks. See *Pittman ex. rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 780 (7th Cir. 2014) (officials must be aware of risk posed by policies and fail to take appropriate steps to address the situation).

Plaintiffs rely heavily on *Gibson v. City of Chicago* in support of their *Monell* claims. 910 F.2d 1510 (7th Cir. 1990). In *Gibson*, a Chicago police officer, Arthur Novit, was the subject of several citizen complaints that alleged that he used excessive force between 1980 and 1982. *Id.* at 1512. The CPD ordered Officer Novit to undergo a psychological evaluation based on the citizen complaints, and as a result, the Department learned that Officer Novit suffered from atypical control disorder, which contributed to him frequently using excessive force when carrying out his duties as a police officer. Consequently, Officer Novit was declared to be mentally unfit for duty and was placed on medical leave. *Id.* The Department issued a written order to Novit that prohibited him from exercising his police powers and from carrying his weapon, but the Department made no effort to recover the service revolver that it had issued to Novit. Approximately three months after being on medical leave, Novit encountered one of his neighbors, identified himself as a police officer, drew his gun, informed the neighbor he was under arrest, and fatally shot him in the chest. *Id.* at 1519. The neighbor's estate brought a lawsuit against the City alleging that it had inadequate procedures regarding the recovery of deadly weapons and ammunition from police officer that were determined to be mentally unfit for duty. *Id.* The Seventh Circuit noted that it was not offering an opinion as to the merits of the plaintiff's § 1983 municipal liability claim and that the City could raise the same arguments again in the form of a summary judgment motion after the parties had an opportunity to conduct discovery on the issue, but that Plaintiff had pled sufficient facts to survive dismissal. *Id.* at

1514, 1522 (noting that "[i]t is well-established that requirements for municipal liability based on policies of 'inadequacy' are rigorous").

*Gibson* is entirely distinguishable from the present circumstances. In *Gibson*, the police department knew that Officer Novit posed a threat to citizens because he had a pattern of excessive force complaints over a period of two years. In addition, he was found to be "mentally unfit" to serve as a police officer after the Department conducted a psychological examination and determined that he suffered from atypical impulse control disorder. Thus, the Department knew or should have known that Officer Novit posed a risk to the public. Here, Plaintiffs have not come forward with any evidence that Defendant Carranza had a history of using excessive force or that he was found to be unfit to act as a police officer. Although Defendant Carranza was on medical leave, it was because he had injured his finger by slamming it in a squad car door. Plaintiffs argue that Defendant Carranza was on medication; however, the record reflects that the only medication Defendant Carranza was taking was Tylenol and possibly another pain medication, and there is no evidence that any medication impaired his mental or physical abilities in any way. Additionally, Defendant Carranza personally owned the handgun that was used to shoot Ramiz Othman; thus, it cannot be said that the City had any authority to retrieve it.

Lastly, Plaintiffs argue that *Gibson* demonstrates that "[i]n the 1980s, the City either had a policy or at least recognized the need to remove police powers and weapons from officers who were unfit for duty." See Pls. Resp. at 7. Plaintiff goes on to allege that "the City has taken what was once a policy of restricting officers unfit for duty and abandoned it." *Id.* But this argument simply misstates the record. As the City's evidence demonstrates, it has numerous policies that address these topics. Plaintiffs' representations about changes in the City's policies over thirty years—unsupported by evidence because Plaintiffs failed to conduct the necessary

discovery to identify the policies or policy changes once the stay was lifted—falls far short of establishing that the City has a deficient practice that is so permanent and widespread that it constitutes a custom with the force of law.

Similarly, Plaintiffs have not presented sufficient evidence that the City's final policymakers were deliberately indifferent to the alleged widespread deficient practices. First, in the absence of any evidence that these constitutionally deficient widespread practices exist, Plaintiffs cannot demonstrate that the City's final policymakers were "deliberately indifferent" to the constitutional rights of citizens. See *Robles v. City of Fort Wayne*, 113 F.3d 732, 736 (7th Cir. 1997) (requiring plaintiff to produce evidence of a pattern of similar violations and the municipality's awareness of that pattern to establish "deliberate indifference"); *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) ("'[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action"). Moreover, Plaintiffs never identified the final policymakers, much less presented any evidence that they knew or should have known about constitutionally deficient practices. Additionally, Plaintiffs have not come forward with any evidence that Defendant Carranza was unfit to be a police officer or had a history of using excessive force. Likewise, Plaintiffs have not shown that the CPD has an ongoing problem in which other police officers, who were known to be unfit for duty, have exercised their police powers and carried service weapons.

As previously mentioned, Plaintiffs argue that the 14 shots fired by Defendant Carranza constitute a "series of bad acts" that provided the City's final policymakers with notice of the purported constitutional violations and that two cases support this conclusion. See Pls.' Resp. at 9; see also *Garrett v. Dart*, 2010 WL 2136670 (N.D. Ill. July 8, 2010); *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). Plaintiffs' arguments and cases are unavailing. First, *Garrett*

dealt with allegations at the motion-to-dismiss stage; Plaintiffs, now at the summary judgment stage, must present sufficient evidence to prove each of the elements of their *Monell* claim and they have wholly failed to do so. Moreover, in *Garrett*, there was a pattern of constitutional violations over a four-month period. Here, in contrast, all of the shots fired by Defendant Carranza occurred within a matter of seconds; consequently, there was no opportunity for the City's policymakers to take notice of the purported deficiencies. Similarly, in *Powe*, the plaintiff alleged that he was a victim of a series of unlawful arrests and that each arrest was based on the same invalid warrant. See *Powe*, 664 F.2d at 651. The court stated, "[w]e find it reasonable to infer that the inadequacy of the description in the warrant was systematic in nature – that is, that it resulted from the procedures followed by the defendants' law enforcement agencies in issuing warrants of the type involved here." *Id*. Again, here, no significant amount of time elapsed between each shot that would have provided the City with an opportunity to take notice of the alleged constitutional deprivations.

Finally, Plaintiffs have not presented any evidence that the City's allegedly unconstitutional policies were the cause, let alone the "moving force," behind Ramiz Othman's injuries. See *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012). In response to Defendant's summary judgment motion, Plaintiffs failed to present any evidence to contradict the City's evidence that Ramiz Othman was an intruder in Defendant Carranza's own home. Moreover, even if Defendant Carranza were not a police officer, he personally owned the firearm that was used to shoot Ramiz Othman. Any causal link between the City's practices and Ramiz Othman's alleged constitutional deprivation is simply too remote to impose *Monell* liability on these facts.

In sum, Plaintiffs have failed to present sufficient evidence to create a genuine issue of material fact as to each of the legal requirements necessary to establish municipal liability under 42 U.S.C. § 1983.  In particular, Plaintiffs fail to put forth any evidence to establish that (1) the City's alleged unconstitutional practices actually exist, (2) that the City's final policymakers were "deliberately indifferent" to these purported practices, and (3) that these alleged practices were the "moving force" behind Ramiz Othman's alleged constitutional violations. Because Plaintiffs bear the burden of proof as to each of these elements and have wholly failed to present such evidence, the City is entitled to summary judgment on Plaintiffs' municipal liability claims against it.

## IV. Conclusion

For these reasons, the Court grants Defendant City of Chicago's motion for summary judgment on Plaintiffs' *Monell* claims [174].

Dated: November 20, 2014

_____
Robert M. Dow, Jr.
United States District Judge